IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **JOHN SNYDER,** | : | |
| | : | |
| **Plaintiff** | : | **Docket No. _____** |
|     v. | : | |
| | : | |
| **NEWBERRY TOWNSHIP,** | : | **JURY TRIAL REQUESTED** |
| **ROB HARKINS,** | : | |
| **DIANE SHELLENHAMER,** | : | |
| **DAVE KIRKPATRICK    ,** | : | |
| **CLAIR WINTERMYER,** | : | |
| **MAXINE KAUFMAN, and** | : | |
| **TONY MILLER,** | : | |
| | : | |
| **Defendants** | : | |

_____ :

**COMPLAINT**

This is an action brought under 42 U.S.C. §1983 and 1988 and the laws of the Commonwealth of Pennsylvania by Plaintiff, John Snyder ("Snyder"), the former Chief of Police of Newberry Township, York County, Pennsylvania (the "Township"), against the named Defendants, including the Township; Rob Harkins, Diane Shellenhamer, Dave Kirkpatrick, Clair Wintermeyer, and Maxine Kaufman, current and former Township Supervisors; and Tony Miller, the

1

Township Manager (collectively, the "Defendants") for their actions that resulted in depriving Snyder of his constitutionally protected property rights.

Snyder served the Township honorably for nearly twenty-eight (28) years, first as a Police Officer and then being promoted to its Chief of Police and serving for ten (10) years. In advance of his retirement, Snyder confirmed with Township officials the amount of his pension that would be paid to him monthly. Importantly, the Township confirmed that the Township would pay Snyder a pension amount which included a portion attributable to Snyder's pay for accrued vacation and sick leave time. The Township had deducted pension contributions from Snyder's accrued vacation and sick time. Snyder relied upon the Township's pension calculations in making his decision to retire. Further, the pension calculations for Snyder were consistent with the policies of the Township at the time of Snyder's retirement. Upon retiring, Snyder began receiving monthly pension payments consistent with the calculation provided by the Township to Snyder and these monthly payments to Snyder continued consistently for more than four (4) years.

On July 18, 2022, the Defendants informed Snyder by letter that they had unilaterally determined that they had miscalculated Snyder's pension amount and would be reducing the amount of his pension going forward and demanded that Snyder return more than $19,000 that he had already received in monthly pension

benefits since his retirement. Snyder refused to repay any amounts. In May 2023, the Township sent Snyder a second letter informing Snyder that the Defendants were modifying his pension payments further. The Defendants informed Snyder that they believed the Township had overpaid Snyder by more than $50,000 and that they would be stopping payment of his pension payments entirely until the Township had recouped this amount. The Township had no legal right under Pennsylvania law to either modify Snyder's pension amount and to force Snyder to repay the pension payments he had received or to set off these amounts.

   Snyder's pension was a legally vested property right under the laws of the Commonwealth of Pennsylvania. The Township had properly calculated the amount prior to Snyder's retirement and communicated this amount to Snyder, upon which he relied in making his decision to retire from the Township. The Defendants' later modification and subsequent halting of his pension payments were unlawfully performed by the Defendants without affording Snyder appropriate due process and by treating him disparately from other officers that had retired from the Township. Additionally, Snyder contends that this decision was made by the Supervisors, in part, as retaliation for Snyder's refusal to take certain actions while Chief of Police that would have benefitted certain Supervisors personally and in some cases would have been illegal.

For these reasons, Snyder seeks damages from Defendants for the full pension amounts due to him including the amounts unlawfully withheld from him, as well as an award of compensatory and punitive damages and the reimbursement of the legal fees that Snyder has been forced to incur as a result of the Defendants' unlawful actions.

## JURISDICTION AND VENUE

1.	This Complaint seeks remedies pursuant to 42 USC §1983 and 1988 alleging violations of the Fourteenth Amendment to the United States Constitution as well as the laws of the Commonwealth of Pennsylvania.  Therefore, this Honorable Court has subject matter and personal jurisdiction.

2.	Venue is appropriate in the United States District Court for the Middle District of Pennsylvania given that both Snyder and the Defendants are located in York County, Pennsylvania.

## PARTIES

3.	The Plaintiff, Snyder, is a resident of York County, Pennsylvania and a citizen of the Commonwealth of Pennsylvania.  Following his service as Chief of Police in Newberry Township, Snyder is now serving as Chief of Police for West Manchester Township in York County, Pennsylvania.

4. Defendant, Newberry Township is a Township of the Second, organized under the laws of the Commonwealth of Pennsylvania located at 1915 Old Trail Rd, Etters, York County, PA, 17319.

5. Defendant, Rob Harkins, is the current Chairman, Board of Supervisors, for the Township.

6. Defendant, Diane Shellenhamer, is the Vice Chairman, Board of Supervisors for the Township,

7. Defendant, Dave Kirkpatrick, is a Supervisor for the Township.

8. Defendant, Clair Wintermyer, is a Supervisor for the Township.

9. Defendant, Maxine Kaufman, is a former Supervisor for the Township.

10. Defendant, Tony Miller, is the Manager for the Township.

## FACTS COMMON TO ALL COUNTS

11. Snyder was employed by the Township as a sworn police officer beginning June 4, 1990, including being promoted by the Township to Chief of Police and serving for more than ten years beginning in March 2008 until his effective date of his retirement on March 2, 2018.

12. The Township operates a Police Pension Plan ("Plan") in accordance with the terms of Act 600, 53 P.S. Section 761 et Seq. (A copy of the plan is attached hereto as Exhibit A).

13. Title 53 P.S. Section 771(c) of Act 600 states, in pertinent part, that monthly pension benefits are to be computed at 50% of monthly average salary of a member during not more than the last sixty (60) nor less than the last thirty-six (36) months of employment.

14. Section 4.01 of the Plan indicates that monthly pension benefits are equal to half of the members' average compensation multiplied by their accrued benefit adjustment.

15. Section 1.02 of the Plan defines compensation as total earnings which is to include salary, court pay, holiday pay, overtime and other remunerations except for unused sick and vacation pay.

16. Importantly, no section or other provision of the Plan provides the Township with the ability or lawful mechanism to recover from members any sums that are determined to have been paid in excess of benefits entitled to members under the Plan.

17. Notwithstanding the above language, between 2012 and 2014, four (4) Newberry Township police officers retired and the Township had included in the

calculation of their monthly benefits accumulated and unused sick leave and vacation leave earned outside of the computation period.

18.  In July of 2015, the Auditor General of the Commonwealth of Pennsylvania ("AG") conducted a compliance audit of the Plan and found that the benefits provided to these four retirees' were in excess of these authorized by Act 600 when Plan officials included accumulated unused sick leave and vacation days earned outside of the compensation period in the benefits calculation. No part of the compliance audit suggested or required that the Township seek to recover any benefits paid to members in excess of these authorized by Act 600 or the Plan. A copy of the Compliance Audit is attached hereto as Exhibit B)

19.  Following the 2015 Audit, during negotiations for a successor collective bargaining agreement ("CBA") between the Newberry Township Police Association ("Association") and the Township, the Township sought to amend the language of the contract to state that only payment for unused vacation and medical leave earned during the last thirty-six (36) months of employment could be included in the calculation of benefits.

20.  On December 18, 2017, Arbitrator Lynne Mountz issued an Award amending the language of the CBA to include the thirty-six (36) month limitation, however it was limited in application to only those hired on or after December 19,

7

2017. (A Copy of this Award is attached as Exhibit C). Per the Mountz Award, the Township understood (and was legally bound) to include the Officers' accumulated unused vacation and medical leave as part of their pension calculation for all officers hired prior to December 19, 2017, including Snyder.

21. No part of the CBA implemented after issuance of the Mountz Award provides the Township or its Supervisors with the ability or lawful mechanism to recover from members any benefits paid to members that determined to be in excess of those authorized by Act 600 or the Plan.

22. At all times relevant, Snyder was and is considered a member and beneficiary of the Plan.

23. Snyder advised the Township on February 6, 2018 that he intended to retire.

24. As part of the process for preparation for his retirement, Snyder met with officials of the Township and was advised by the Township that he would be receiving monthly Pension benefits in the amount of $5,247.75 based upon a calculation provided by the Township and its agents to Snyder. **Importantly, this specifically included all of Snyder's accumulated sick and vacation leave time.** This was consistent with the Mountz arbitration decision.

25. Importantly, the Township had deducted pension payments from the accumulated sick and vacation time paid to Snyder.

26. Snyder detrimentally relied upon the calculation provided by the Township in making his decision to retire from the Township. He retired officially on March 2, 2018.

27. After his retirement, Snyder began receiving his monthly pension benefit. He received these payments consistently for over four years.

28. In April of 2019, the AG published another compliance audit of the Township's Police Pension Plan for the dates ranging from January 1, 2015, until December 31, 2018, calling attention to the Township's failure to bring the plan into compliance as instructed by the prior AG report. Importantly, the new report by the AG neither suggested nor required that the Township seek to recover any benefits paid to members in excess of those authorized by Act 600 or the Plan. (A Copy of the April 2019 report is attached as Exhibit D.)

29. On July 18, 2022, the Township sent Snyder correspondence indicating that his vacation and sick leave time was improperly included in the calculation of the Pension payments he had received resulting in overpayments of about $350 per month for years 2020, 2021 and 2022. See Exhibit E.

30. Without providing Snyder appropriate due process, the Township had recalculated Snyder's monthly benefit and ordered him to repay excess payments since 2018 which the Township calculated was $19,162.04. Importantly, the Township took no similar actions against the other four officers that had retired prior to Snyder consistent with the Mountz Award

31. In 2022, Sergeant Keith Farren of the Newberry Township Police applied for retirement with the expectation that his benefits would be calculated to be similar to how Snyder and the four officer's pensions had been calculated as he was hired prior to December 19, 2017 date mentioned in the Mountz Award; however, the Township subsequently informed Sergeant Farren this would not be the case.

32. The Association filed a grievance on behalf of Sergeant Farren and a hearing was held on November 17, 2022 before Arbitrator Kathleen Spilker.

33. At this hearing, the Township now represented that there had never been a past practice at the Township of including lump sum payments for accumulated but unused leave in the calculation of Pension benefits, and that the Association was mistaken in believing that such existed.

34. The Township further asserted that lump sum payments of accumulated but unused leave were never included in any Pension calculations and that the AG Audits in 2015 and 2019 were incorrect and have since been retracted by the AG.

35. Based upon these representations made by the Township, Arbitrator Spilker found as part of her Award denying the grievance that there was no past practice of including accumulated but unused leave in Pension benefit calculations. The award denied including the accrued vacation and medical leave in the pension calculation for Farren. Importantly, as support for her decision, the arbitrator emphasized that the Township had not deducted pension payments from the accrued vacation and medical leave paid to Farren. A copy of the Spilker Award is attached hereto as Exhibit F.

36. Based on the Farren arbitration and Spilker Award, the Township determined that Snyder's pension should be revised a second time and proposed to reduce his pension from $5247.75 per month to $4,837.71 per month beginning in June of 2023. (<u>See</u> Letter at Exhibit E.). Importantly, the facts related to Farren's pension case were materially different than Snyder's facts. As noted previously, unlike Farren's case, the Township had deducted pension funds from Snyder's accrued vacation and sick leave and informed Snyder prior to his departure that Snyder's pension would include these amounts. That was not true for Farren.

37. The Township additionally alleged that Snyder had been "overpaid" $50,744.64 and the Township was going to unilaterally and unlawfully terminate Snyder's pension payments until the Township had recouped these amounts.

38. At no time prior to this instance, had the Township attempted to recoup from Snyder or any other member of the Plan any sums that the Township had determined were paid in excess of the Plan.

39. Snyder does not and will not consent to the unilateral withholding of his Pension benefits by the Township and has communicated this to the Township. Further, Snyder contends that his pension amount was calculated correctly in January of 2018 based upon the Township's policies in place at that time and communications to him upon which he relied prior to his retirement.

40. The Township Supervisors and Manager treated Snyder disparately from others that worked at the Township in their reduction in Snyder pension benefits. Snyder contends that the reason for this disparate treatment, was due in part, to certain Supervisors desiring to retaliate against Snyder for his refusal to perform personal, potentially illegal actions, for certain Supervisors.

41. On June 20, 2023, Snyder filed a complaint against the Township in the Court of Common Pleas of York County, Civil Division, Docket No. 2023-SU-00615, in which Snyder seeks a determination that the withholding of his pension

payments by the Township is unlawful, that he should be refunded the inappropriately withheld amount and that his full pension should be reinstated.

## COUNT I

### VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS, UNDER 42 USC §1983 and 1988 AGAINST DEFENDANTS

42. The preceding paragraphs are incorporated by reference.

43. Snyder has a protected property interest in his pension benefits.

44. The Defendants acted in an arbitrary and capricious manner under the color of law by unilaterally modifying Snyder's pension benefits and by not providing Snyder with appropriate due process prior to this modification.

45. The Defendants' actions violated Snyder's Due Process rights as guaranteed by the 14th Amendment of the United States Constitution.

46. The Defendants' actions have caused, and will continue to cause, financial harm to Snyder.

47. The Defendants' actions are so outrageous and shocking because of the Defendants' evil motives and/or reckless indifference to Snyder's rights that an award of punitive damages is appropriate.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Repayment of the full amount of Snyder's pension benefits that the Defendants have wrongfully withheld from Snyder;

(b) A declaratory judgment requiring the Township to honor its obligation to pay Snyder his full pension benefits going forward;

(c) Compensatory damages;

(d) Punitive damages (against the Township Supervisors and Manager);

(d) Reasonable attorneys' fees and costs of suit; and

(e) Such other and further relief as the Court may deem just and proper.

## COUNT II

### VIOLATION OF PROCEDURAL DUE PROCESS, ABUSE OF PROCESS AND RETALIATION UNDER 42 USC §1983 and 1985 AGAINST DEFENDANTS

48. The preceding paragraphs are incorporated by reference.

49. Snyder has a protected property interest in his pension benefits.

50. The Defendants administered the process in reducing Snyder's pension in an intentional, unequal and discriminatory manner in order to retaliate

against Snyder.  In so doing the Defendants treated Snyder disparately in violation of Snyder's rights under the First and Fourteenth Amendments to the Constitution.

51. The Defendants' actions have caused, and will continue to cause, financial harm to Snyder.

52. The Defendants' actions are so outrageous and shocking because of the Defendants' evil motives and/or reckless indifference to Snyder's rights that an award of punitive damages is appropriate.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Repayment of the full amount of Snyder's pension that the Defendants have wrongfully withheld from Snyder;

(b) A declaratory judgment requiring the Township to honor its obligation to pay Snyder his full pension benefits going forward;

(c) Compensatory damages;

(d) Punitive damages (against the Township Supervisors and Manager);

(d) Reasonable attorneys' fees and costs of suit; and

(e) Such other and further relief as the Court may deem just and proper.

July 17, 2024

                Respectfully submitted,

                James Snyder, Esq., LLC

                /s/ James C. Snyder

                James Snyder, Esq. (GA #666264)
                5137 Lakesprings Ct.
                Atlanta, GA 30338
                Telephone (404) 822-0349
                Fax: (404) 822-0349